May it please the Court, Benedette Sewell for the appellants Ralph Gaudet and Patrick We're here this morning because the appellants were denied summary judgment at the district court level based on absolutes immunity and qualified immunity. It's their position that absolutes immunity applied but in the absence of absolutes immunity that qualified immunity did. Addressing first absolutes immunity, when you consider three cases that are discussed at length in the appellants briefs the Butts case, the Wilner case and the Goldstein cases, it is very clear that absolutes immunity applies to in this instance the building inspectors investigation and procedure against the plaintiff or against Mr. Snyder with respect to zoning violations at his property. What they did was they found they were I can understand that your absolute immunity question may not be dependent on any factual disputes. But assuming hypothetically that your clients, the two building inspectors, are not entitled as a matter of law to absolute immunity, then we are back to the qualified immunity question. And on the qualified immunity question, we have the initial question of the jurisdiction of this court. As you know, under the Johnson case, if there are material facts in dispute, then we don't have jurisdiction over this interlocutory appeal over denial of qualified immunity at summary judgment. So what is the plaintiff's case which you are willing to admit to and then argue that nonetheless your clients are entitled to qualified immunity? What the plaintiff has done is to assert allegations against the defendants, against the appellants. What he has not done is actually provided any evidence in support of those allegations. The complaint is replete with allegations of conspiracy and of retaliation by the building inspectors against Mr. Snyder. But at the summary judgment level, which is the time to put forth evidence that supports those allegations, the plaintiff has put forth absolutely none. In contrast to that, what the appellants have done is by deposition testimony and by affidavit shown that in fact the plaintiff's allegations are wrong. And it's not a question of fact because there has to be something to actually support an allegation. And the plaintiff has put forth nothing. There's allegations that Snyder's former employer, the city council woman, started making repeated phone calls the day she was fired to the building inspectors. That's not quite accurate. The day that she was fired, she made a phone call to the building department. What you have to understand is that the building department gets these sorts of calls all the time. If we could go back to the important topic that Judge Thompson has introduced, let us assume that the fired employee used all of her contacts and her position to influence the building department to take a close look at this man's property. You must assume that to be true. Why, then, are your clients entitled to immunity? Is it because that fact is irrelevant? Well, it is irrelevant because it does not matter how or why the building department discovers that a violation exists. If the violation exists, then they have the obligation to move forward on it. No, they have discretion, don't they? The district court, the Waltham District Court, actually verified that the violations existed. No, that there was sufficient evidence to warrant the bringing of the inspectional charges. Is that what it said? There is additional language that says, and subsequent hearings were scheduled for Mr. Snyder to bring his property into compliance. Okay. And you say that that finding by the court disposes of any possible claims because as long as your client had a valid reason to take the actions they did, whether it was motivated by malice is irrelevant. Is that correct? Correct. There's no indication of malice. What about the equal protection class of one argument? Mr. Snyder has to show that he was substantially similar to at least another property owner in Waltham. He has not done that. In fact, he concedes in his brief that he was not able to come forth to put forth any other property in Waltham. What about the prior owner? The prior owner is a completely different situation. The prior owner was an optometrist. And what the 1967 variant said was, we will allow this property to be used as three professional offices. Professional offices such as lawyers... And what the variant said was, the person who, the owner who applied for the variance asked for either two offices and a residence or three offices. And the variance gave him three offices. Now, subsequent building inspectors made a mistake with respect to interpreting that. They clearly only looked at the minutes. They didn't look at the variance itself. The variance only allowed for three offices. The fact that the prior optometrist... Now, if you are the defendants in this lawsuit, are you saying that they went back and made an independent interpretation that the prior inspector had misunderstood the initial variance grant? They didn't even really consider that. They were really looking at how the property was used by Mr. Snyder. What the law says also is that even if... I'm not sure what you're saying is an incorrect letter indicating that the property could be used as a residence on the second floor, which is consistent with the use he was maybe... Well, he denies that the person was living there. There is no indication, Your Honor, that where the residence was to be. This building looks like a house. There is no way that there could be any residence at this time or in 2006 when this arose. There's no way there could be any residence on the second floor. There was no second means of egress and there were no basements. There were no bathing facilities. There wasn't even a bathroom or anything. I don't think there was, except for a toilet, that there was any bathing facilities on the property. So even if we get past did it comply with the variance, you couldn't have that use at the time that the cease and desist was issued, because simply you couldn't have people living upstairs where they had no way of getting out of a commercial building. What about the first floor unit? As I understand it, the plaintiff is in a sort of condition where they can't get out of the first floor unit. Correct. And the prior owner had been an optometrist. Correct. And then to go back to Judge Kayada's question, they're not comparable because the zoning letter explicitly allowed for an optometrist's office among the list of professional offices that were available. And this owner was not using it for professional purposes. We never finished that line of thought, so I'd like to go back. The variance allowed for professional use for three offices. The subsequent lessons from the building inspectors, when a subsequent optometrist, because there were two optometrists in a row who owned the property, the subsequent optometrist said, is it okay if I use this as a residence? The building inspectors made a mistake. They said, yes, you can use it both as two offices and... I'm aware of ships passing in the night. I'm not concerned about the residence issue. I'm concerned about the professional office restriction. And you have yet to answer the question that Judge Kayada put to you. If we go back to the similarly situated prong of the equal protection class of one, I'm not concerned about that. You were asked, he said he couldn't come up with anybody else, and so Judge Kayada asked you about what about the prior use. And you haven't answered that. I will absolutely answer it now. The prior use was professional offices. There is no professional use of this building. Mr. Snyder essentially receives and ships small parts. One of the people he had upstairs was a masseuse, wasn't registered with the states, wasn't licensed by the states. The other person who was also residing there had a roofing business. And therefore his argument, you say, that there was somebody similar, has not been met, and therefore the equal protection class of one claim fails. Correct. What about the underlying issue that as long as there is a valid reason to have sent the inspection letters, there can be no equal protection class of one claim? Correct, Your Honor, because there's no abuse of power here, which is the second step. The fact that the building department's actions were validated, that there was a violation, and that the district court did not dismiss the appeal that the plaintiff made, indicates that there was no abuse of power here. And the level to which any abuse of power must achieve in order to satisfy equal protection simply does not exist here. Did any other owners get multiple visits from the building inspectors until they finally changed their mind to comply with the city council's wishes? Your Honor, there's no evidence that there was any complaint about the use of this particular property. The building inspectors don't randomly visit properties. It's usually people who are saying, my neighbor is doing something that I know is in violation of the law. In this instance, even though the call came in on August 6th, nothing was done until January. It's not as if the building department jumped to attention and decided that they were going to harass Mr. Snyder. It simply didn't happen in that way, and there's no evidence more specifically from that the plaintiff has put forth that would support that. In contrast, there is evidence abounds in affidavit form and deposition testimony from the building inspectors. There is evidence from the appellants that say that they had no idea that any of this history had gone on between Ms. Kalora and the appellant. Any other questions? No. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, this is Zaheer Semih representing the plaintiff appellee Robert Snyder. This case raises two issues. First, there's an absolute immunity argument. That is the only question of law that is properly before this Court. The qualified immunity issue raised by the appellants depends on disputed questions of material fact, and as the district court found, there are numerous disputes of material fact in this case. Yes, but the trial judge didn't help us very much. He said, you just look at all the pleadings on summary judgment, and it's obvious there are disputed issues of fact, without telling us which ones were material. And your opponent has presented an argument that, yeah, there are disputes of fact, but they're not material to the law. So let's go through. First, do you accept the later annotation to the district court letter? Absolutely not, Your Honor. That annotation, that docket entry in the Waltham District Court proceeding was procured, the language was drafted by the attorneys for the defendants in the city of Waltham without any input from the plaintiff, without any notice. Do you have any evidence of irregularity? Court records carry with them a presumption of regularity. I think that the irregularity is one, it was drafted solely without any input from, solely by the defendants' attorneys, without any input from the plaintiff, three years after the conclusion of the proceeding. That may be, but it's your burden to show something that the district court found to be true, sufficiently so that it put it into a record was not true. So let's start with the hypothetical that these inspectors actually were found by a court to have had a valid basis, to have served him with the initial complaints, and there was sufficient evidence of that. There was sufficient validity that the court continued the proceedings to give him some time to come into compliance. Let's assume that to be so. What happens to your case at that point? Your Honor, if that were accepted as true, which we absolutely deny, Mr. Schneider's case would fall apart. On all claims? Probably on all claims. But the fact that this docket entry first made its appearance at the summary judgment stage of this litigation, three years after the conclusion of the Waltham District Court proceeding, and it is obvious from the circumstances that this was a litigation tactic. Counsel, I'm sorry, are the Waltham District Court proceedings recorded? I don't believe they are. Not these type of civil proceedings. I don't believe there's any recording available. So a follow-up question. It's been represented, and if one were to look at the district court docket entries, it does seem to be the case that your client seemed to have acknowledged some basis for him to take remedial efforts to come into compliance. Are you denying that that was your client's position before the district court? My client's position has been that he was never in violation of any zoning ordinance, and that if he would You are not answering my question. He agreed to do anything reasonable to appease the city. And he agreed to take what I believe were characterized as remedial efforts. His position was that whatever allegations, assuming they were true against him, they weren't We deny that they were true, but they weren't happening anymore. Nobody was living on the property, if they ever were, which my client absolutely denies. He denies the allegation that he's not First of all, some of the allegations are so vague. The allegation that he's not a professional, I mean, half the I mean, if a tutor, according to the language of the zoning ordinance, if a high school tutor sets up shop at 57 Grand Street at this property What is there in the record that establishes with certainty that there was no basis whatsoever in terms of the condition of the property for these inspectors to have sent out those notices? Well, there are e-mails, excuse me, there are e-mails between the city building department and the law department Specifically where the building inspectors initially found that there was no violation And that subsequently after repeated calls from Sally Calora, the question in this case is Did the animus and personal hostility of Sally Calora infect the actions of Gaudette and Powell and other city officials? Excuse me? Infect or cause? Exactly. No, they're two different things. Well, our position is there's sufficient evidence in the record to say that that personal animus actually caused the city officials to issue these notices of violations. They initially inspected the property and apparently reported no violation. After repeated calls and inquiries There was an oral report, the finding was no violation. They were asked to put it on paper and then when it comes out several months later on paper it says there was a violation. Is that what happened? That's what the paper trail shows. And in the meantime, in those several months, there were repeated communications and calls by Sally Calora to the building department, to the law department. Yes, we've taken that as assumed. There is sufficient evidence in the record, this is what the district court recognized, that the animus of Sally Calora caused the defendants to find these violations. And some of the violations, the allegations of violations, on their face are so pretextual. For example, he's not a professional. I happen to disagree with you on those points, so I don't think that argument, you know, on the face of it, it's so absurd, it couldn't possibly be true. When, in fact, it goes to court, the court keeps the matter under advisement, keeps going. If it were that self-evident, the court wouldn't have done that. Eventually, in 2008 or 2009, the court essentially denied the issuance of a complaint, which is what the city of Waltham requested. And until three years later, when during the summary judgment stage of this litigation, the docket entry came up. But isn't this case about the bringing of the inspectional charges? That's the abuse of government power that you're complaining about. That is the abuse of government power. And there's sufficient evidence in the record to support the claim that these reasons were pretexts. Help me with this. Let's assume that the city counselor was just out to get your guy because she'd been fired and she was tipped off. And so she wanted to use her power. So that's the only reason she complained. If we also assume that your guy was flatly violating, indisputably violating the ordinance, he had a pig farm and it was supposed to be a professional office. Which he does. Wouldn't you lose? Yes, we would. Okay. So I think I'm in the same place you are, which is it hinges on whether and how good the argument is for him violating the ordinance, being out of compliance. And given what he was doing, he was shipping and receiving. He denies that his office was a shipping and receiving operation. But what's his testimony in the record about what he did? His testimony is that when he purchased that building several years prior to the events giving rise to this litigation, he went to the building department of the city of Waltham. And my question is, what was he doing at the time he was cited? He was using his building as an office for his company. And what the company do? The company manufactures small precision tools for use in medical surgeries. And that facility is off-site. The building, his first floor, is an office. There's a computer. He pays bills. He receives accounts. He also examines the small items that he manufactures from his facility. That doesn't sound to me like a professional office. Why is it? Well, I mean, I'm not sure. That's the thing. What is professional? I mean, he's a professional engineer. If there's room for judgment by the city officials, then you've lost your case. Our claim, Your Honor, is there is no reasonable basis to say that he's not a professional. And that the reason offered, the reasons offered that he's running a warehouse and that he's running a shipping receiving operation are so frivolous that they are pretexts. And it's a question of fact for a jury to determine on a full evidentiary record whether those reasons are mere pretexts or whether they are infected or caused by the animus of Sally Calora. For those reasons, we'd ask the court to affirm. I just want to see if I can pin you down on the question that you still haven't quite answered. This court entry that was entered three years later, are you denying that it accurately reflects what happened in court? Your client knows if he went to court and made a concession as is what is suggested in the entry and said that he would come into compliance, he would take actions to come into compliance. He knows if there was a concession and an agreement on his part to come into compliance. We deny that that accurately represents what Mr. Snyder conceded in court. He didn't concede anything. He never admitted that he was violating any zoning ordinance. That's a tricky answer. Did he represent that he was going to take further actions in an effort to resolve this matter? His position was he didn't need to take any further actions. Now what his position was, what did he say to the judge? He knows what he recalls saying to the judge. His statement is I was never in violation. There was nothing I needed to do. You can come to my property and look at how I run my office, my building. There's nothing I need to do to come into compliance. He never conceded that he was in violation of any zoning ordinance. Unfortunately, there's no recording of those Waltham District Court proceedings that I'm aware of, but that's what he stated. Thank you.